IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RITA FLORIAN PINGREE,<br><br>          Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, CAROLINE MILNE, and WAYNE SAMUELSON<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS 9 AND 10 OF THE SECOND AMENDED COMPLAINT**<br><br>Case No. 2:20-cv-00724-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

This case arises from allegedly wrongful actions taken by defendants University of Utah ("the University"), Caroline Milne ("Milne"), and Wayne Samuelson ("Samuelson") against plaintiff Rita Florian Pingree ("Pingree"). Before the court is Defendants' motion to dismiss counts nine and ten of the second amended complaint. ECF No. 27. For the following reasons, the court GRANTS Defendants' motion.

**FACTUAL BACKGROUND**

Pingree graduated from the University's medical school in 2012. Prior to her graduation, Pingree applied to a residency program—an intensive post-graduate training program for medical school graduates—at the University. As part of the application process, Pingree interviewed with Milne, who directed the University's internal medicine residency program. Milne focused the interview discussion on Pingree's then-husband, Jim Pingree ("Jim"). Milne had worked with Jim

when they were residents at the University and Milne expressed positive feelings about Jim. During the interview, Pingree informed Milne that she and Jim were in the process of divorcing.

At the conclusion of the interview process, residency programs rank candidates who the program is interested in employing. Milne elected not to rank Pingree, stating that Pingree could not handle the demands of residency due to her ongoing divorce. The amended complaint details Pingree's numerous subsequent attempts to obtain residency and internship positions at the University.[1] Pingree alleges that Milne continuously interfered with her applications and job offers.

The present motion relates to the two claims that Pingree brings against Samuelson. After Pingree struggled to obtain a residency or internship at the University, Pingree reached out to Vivian Lee ("Lee" or "Dean Lee"), then the CEO of the University of Utah Healthcare and Dean of the School of Medicine. Pingree expressed her concern that she had been unable to secure a position at the University and highlighted the comments by Milne regarding Pingree's inability to handle the rigors of a residency program as a single mother. Lee forwarded the email to several people, including Samuelson, stating "[r]eceived this email. I don't know this person. Wayne, do you know her?" ECF No. 24 ¶ 57. Samuelson replied, stating

> Rita was a very difficult medical student. Her divorce was very public and she tried to get the School involved with her court battle. I have obviously not seen any of her applications for residency positions, but I would consider her to be a high risk applicant based on her history of interpersonal interactions while in medical school. I think the concerns registered by program directors who have reviewed her applications are likely valid.

ECF No. 27-1, at 3.[2]

---

[1] Pingree's divorce decree required her to reside in Utah with her daughter, so she had to turn down several out-of-state residency offers.

[2] "In deciding a Rule 12(b)(6) motion, a federal court generally should not look beyond the confines of the complaint itself." *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002) (citation omitted). But "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's

Based on this email, Pingree alleges two causes of action against Samuelson—one for defamation and one for interference with business relations. First, Pingree alleges that Samuelson defamed her by publishing disparaging information about Pingree to Lee and other residency program administrators. Second, Pingree alleges that Samuelson interfered with Pingree's prospective employment by improper means by making untrue statements and causing her reputational harm. Defendants move to dismiss these two claims, citing the Utah Governmental Immunity Act ("UGIA").

## LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

The University argues that the UGIA bars Pingree's ninth and tenth causes of action against Samuelson. The UGIA is a "single, comprehensive chapter govern[ing] all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties." *Peak Alarm Co., Inc. v. Werner*, 297 P.3d 592, 597 (Utah 2013) (quoting UTAH

---

claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.* Here, the chain of emails that includes Samuelson's allegedly defamatory statements form a central part of Pingree's complaint and Pingree does not dispute the authenticity of the emails submitted by Defendants. Accordingly, the court considers the emails incorporated by reference.

3

CODE § 63G-7-101(2)(b)). The UGIA states that "[e]xcept as otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." UTAH CODE § 63G-7-201(1).

Utah courts apply a three-part test to determine whether a governmental entity is immune from suit under the UGIA: "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Peck v. State*, 191 P.3d 4, 7 (Utah 2008) (citation omitted).

I.     **GOVERNMENTAL FUNCTION**

Under the first prong, the court asks whether the particular activity in question constitutes a governmental function. "Governmental function" is defined broadly as "each activity, undertaking, or operation of a governmental entity" or of "a department, agency, employee, agent, or officer of a governmental entity," as well as "a governmental entity's failure to act." UTAH CODE § 63G-7-102(5)(a)-(c).

Samuelson's email constitutes a governmental function. The parties do not dispute that the University of Utah is a governmental entity and that Samuelson is an employee of that governmental entity. Thus, any "activity, undertaking, or operation" by Samuelson qualifies as a governmental function. Accordingly, Defendants meet the first prong.

II.     **EXPRESS WAIVER AND EXCEPTIONS**

The court addresses the second and third prongs—whether governmental immunity was waived for the particular activity and whether there is an exception to that waiver, respectively—in tandem. The court begins by discussing the contours of the UGIA's grant of immunity for individual government employees. The court then turns to the UGIA's provisions regarding immunity for particular types of claims. In analyzing the UGIA's language, the court finds that

4

Pingree's claims fail for two reasons. First, both claims against Samuelson fall under the UGIA's broad grant of immunity to government employees. Second, Pingree's defamation claim (cause of action nine) and Pingree's interference with business relations claim (cause of action ten) fall under the UGIA's express retention of immunity from particular kinds of claims.

### A. *Immunity for Individual Government Employees*

The UGIA affords broad immunity to individual government employees for acts performed within the scope of their employment. The court first discusses whether Samuelson acted within the scope of his employment in sending the allegedly defamatory email. The court then addresses whether any waiver of immunity applies to Samuelson's conduct.

#### i. Scope of Employment

As a threshold matter, the UGIA retains immunity for claims "against governmental entities or against their employees or agents arising out of the performance of the employee's duties, *within the scope of employment*. UTAH CODE § 63G-7-101(2)(b) (emphasis added). The parties dispute whether Samuelson's comments occurred within the scope of employment. Pingree argues that Samuelson acted outside of the scope of his employment because his job position did not task him with evaluating Pingree as a residency applicant or with providing recommendations about her competency. Pingree instead characterizes Samuelson's comments as "gossip" that arose outside of the scope of Samuelson's employment. ECF No. 31, at 7.

The Utah Supreme Court applies the *Birkner* test to determine if an employee's action is within the scope of employment. "An employee's action is within the scope of employment under *Birkner* if it is (1) 'of the general kind the employee is employed to perform' and (2) 'motivated, at least in part, by the purpose of serving the employer's interest.'" *Salo v. Tyler*, 417 P.3d 581, 589 (Utah 2018) (quoting *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1057 (Utah 1989)). "Thus, an

employee acts within the scope of employment when her acts are 'generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto.'" *Id.* (citation omitted). Indeed, "[t]he question is whether the worker is performing 'duties assigned by the employer, as opposed to being wholly involved in a personal endeavor.'" *Id.* (citation omitted).

The court has no doubt that Samuelson was performing duties assigned by his employer—not embarking on a personal endeavor—in responding to Dean Lee's email. As the CEO of the University of Utah Healthcare and Dean of the School of Medicine, Lee clearly supervised Samuelson. When a supervisor—indeed, the organization's principal supervisor—requests input on a specific student's situation, providing that input is inherently a duty assigned by the employer. Moreover, maintaining a familiarity with the medical students at the University is certainly "of the kind" of employment a Vice Dean for Education at the School of Medicine is employed to perform. Pingree correctly notes that Samuelson was not responsible for evaluating Pingree's residency application. But that is inapposite. Samuelson was motivated by serving his employer's interests—here, an interest in learning more about a specific student's circumstances. Accordingly, Samuelson acted within the scope of his employment when he sent the allegedly defamatory email.

    ii.  **Waiver of Immunity for Government Employees**

The UGIA renders an action against a government entity the sole remedy for injury caused by a state employee acting within the scope of his or her employment unless the employee acted or failed to act through fraud or willful misconduct. *See* UTAH CODE § 63G-7-202(3). The UGIA defines willful misconduct as "the intentional doing of a wrongful act, or the wrongful failure to act, without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury." *Id.* § 63G-7-102(11). Accordingly, statutory "willfulness requires a showing (1)

6

that the government actor intentionally performed a wrongful act (2) with an awareness that injury will likely result." *Salo v. Tyler*, 417 P.3d 581, 590 (Utah 2018).

Pingree contends that she has sufficiently alleged willful misconduct by Samuelson. She points to her allegations that "Samuelson knew the information was false," that he made "untrue statements that he had no basis for making," and that "Samuelson made these statements . . . intentionally." ECF No. 24 ¶¶ 239, 243-44. But these are mere conclusory allegations that Samuelson intentionally made false statements. And "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, "the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Id.* Pingree has neither alleged what specific statements were false, alleged why they were false, nor how Samuelson would have known that they were false. *Salo*, 417 P.3d at 590 ("[D]efamation is . . . willful . . . only if the defendant had knowledge of its falsity."). Absent allegations that Samuelson engaged in willful misconduct, the UGIA immunizes Samuelson from lawsuit.

This analysis alone provides a sufficient basis to dismiss the claims against Samuelson. But in the interest of thoroughness, the court also considers the UGIA's applications to the particular claims in question.

### B. Immunity for Particular Claims

Under the UGIA "'each employee of a governmental entity [is] immune from suit for any injury that results from the exercise of a governmental function' unless the UGIA waives immunity for the specific cause of action.'" *Jensen v. West Jordan City*, No. 2:12-cv-736, 2016 WL 4256946, at *11 (D. Utah Aug. 11, 2016). The court determines that the UGIA does not waive immunity for claims of defamation or interference with business relations.

> **i. Defamation**

The UGIA does not contain any provision waiving immunity for intentional torts. *See Miller v. Utah*, 638 F. App'x 707, 715 (10th Cir. 2016) (unpublished) ("There are no provisions in the [UGIA] waiving immunity for intentional torts . . . ."). Defendants argue that this entitles Samuelson to immunity on Pingree's defamation claim.

The court disagrees. Defamation requires that (1) the defendant published the statements; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages. *DeBry v. Godbe*, 992 P.2d 979, 982 (Utah 1999). Where the plaintiff is not a public figure, negligence is the requisite degree of fault. *See Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 283 n.13 (Utah 2005) ("[A] defamation plaintiff who is not a public figure must . . . establish negligence on the part of the defendant.").[3] Here, the plaintiff is not a public figure. Accordingly, her defamation claim requires a showing of negligent—not intentional—false statements.[4] Accordingly, the UGIA's lack of express waiver of immunity for intentional tort causes of action does not apply to defamation.

But Defendants are not without recourse. The UGIA expressly waives governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee

---

[3] Although the Utah Supreme Court has merely raised the issue without answering the question, the Utah Supreme Court has suggested that in a "purely private matter" where all parties are private figures and no issue of public concern is involved, the degree of fault standard could be even lower than negligence—i.e., strict liability. *See Ferguson v. Williams & Hunt, Inc.*, 221 P.3d 205, 213-14 (Utah 2009). But the court need not resolve that question because both standards fall below the standard of intentionality, or actual malice.

[4] Defendants argue that Pingree's defamation claim is pled as an intentional tort. They are correct that Pingree alleges that "Samuelson knew the information was false." ECF No. 24 ¶ 239. But simply because Pingree pled a higher degree of fault than required by Utah law does not convert defamation into an intentional tort where Utah law requires no showing of intent.

8

committed within the scope of employment." UTAH CODE § 63G-7-301(2)(i). However, Utah Code § 63G-7-201(4) provides a series of exceptions to the general negligence immunity waiver. The exceptions include "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from . . . libel [or] slander." *Id.* § 63G-7-201(4)(b).

This exception covers the present case. While an injury arising from defamation is not listed as an explicit exception to the negligence immunity waiver, the exceptions include libel and slander. And "'defamation' encompasses both libel and slander." *West v. Thomson Newspapers*, 872 P.2d 999, 1007 n.12 (Utah 1994); *Jensen v. Sawyers*, 130 P.3d 325, 332 n.6 (Utah 2005) ("Libel consists of the publication of defamatory matter by written or printed words." (quoting Restatement (Second) of Torts § 568(2) (1977)); *see also Sussman v. Weber State Univ.*, No. 2:16-cv-1119, 2017 WL 706191, at *5 (D. Utah Feb. 22, 2017) (holding that "[t]he State has not waived immunity from defamation suits" and citing to "libel [and] slander" listed in Utah Code § 63G-7-201(4)(b) as evidence). Because Utah has expressly retained immunity from defamation suits, Pingree's ninth cause of action is barred under the UGIA.

### ii. Interference with Business Relations

Pingree's tenth cause of action fails for largely similar reasons. Pingree does not clarify whether she intended to allege intentional interference with business relations or negligent interference with business relations. Her complaint alleges that Samuelson "made these statements either intentionally . . . or negligently." ECF No. 24 ¶ 244. To the extent Pingree alleges intentional interference with business relations, the UGIA contains no waiver of immunity for intentional torts. *See Miller v. Utah*, 638 F. App'x 707, 715 (10th Cir. 2016) (unpublished) ("There are no provisions in the [UGIA] waiving immunity for intentional torts . . . .").

9

And to the extent Pingree alleges negligent interference with business relations, the UGIA also retains immunity. As noted above, the UGIA expressly waives governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." UTAH CODE § 63G-7-301(2)(i). But Utah Code § 63G-7-201(4) excepts "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from . . . a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional." UTAH CODE § 63G-7-201(4). Here, any injury to Pingree as a result of the alleged interference with business relations—such as lost prospective employment or reputational damages—stemmed directly from Samuelson's allegedly untrue statements. The UGIA expressly retains immunity over injuries resulting from such misrepresentations, whether negligent or intentional.

Therefore, whether Pingree intended to allege intentional interference with business relations or negligent interference with business relations, the UGIA does not waive immunity for either claim.

### CONCLUSION AND ORDER

At bottom, whether the court analyzes limitations on individual liability contained in the UGIA or limitations on particular types of claims specified by the UGIA, Samuelson retains immunity from Pingree's claims for defamation and interference with business relations. Accordingly, the court GRANTS Defendants' motion to dismiss and DISMISSES WITHOUT PREJUDICE counts nine and ten against Samuelson.

DATED May 2, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge