IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RITA FLORIAN PINGREE,<br><br>  Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH and CAROLINE MILNE,<br><br>  Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTION TO BIFURCATE**<br><br>Case No. 2:20-cv-00724-JNP-CMR<br><br>Chief District Judge Jill N. Parrish |

Before the court is Plaintiff's motion for the court to decide the equitable claims and remedies in a bifurcated proceeding. ECF No. 226. Defendants oppose the motion. ECF No. 232. For the following reasons, the court grants in part and denies in part Plaintiff's motion.

## LEGAL STANDARD

"Bifurcation of issues is sanctioned by Federal Rule of Civil Procedure 42(b) 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'" *Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003). "Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable." *Id.* (quoting *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)). A court is granted "considerable discretion in determining how a trial is to be conducted." *Angelo*, 11 F.3d at 964.

## DISCUSSION

Plaintiff's motion seeks for the court, rather than the jury, to rule on two matters. First,

Plaintiff asks the court to rule on Dr. Pingree's promissory estoppel claim. Second, Plaintiff asks the court to determine the equitable remedies available to Dr. Pingree based on her claims. ECF No. 226. As clarified at oral argument on the motion, Plaintiff seeks for the court to decide these equitable issues after the jury has returned its verdict. Plaintiff is not seeking two bifurcated evidentiary proceedings. Rather, she proposes that all evidence relevant to Plaintiff's claims would be presented during the jury trial, including evidence relevant to her promissory estoppel claim. However, the promissory estoppel claim and any claims for equitable damages would not be presented to the jury. Rather, the court would rule on those equitable matters after the jury reaches its verdict on the legal claims and remedies, based solely on the evidence presented in trial and any subsequent briefing the court may choose to request.

I.  **Promissory Estoppel and Forms of Relief under Title VII and Title XI**

The court first considers if the issues Plaintiff identifies are indeed equitable in nature. Plaintiff asserts that the remedies of backpay and reinstatement and front pay in lieu of reinstatement are equitable remedies under Title VII that the court should decide. Plaintiff also asserts that backpay and other prospective remedies under Title IX are equitable in nature. Finally, Plaintiff argues that promissory estoppel is an equitable claim.

The court agrees that the issues of backpay and reinstatement and front pay in lieu of reinstatement are equitable remedies under Title VII that are typically decided by the court. As Plaintiff notes, 42 U.S.C. § 2000e-5g "allows the court to award 'equitable relief as [it] deems appropriate,' for Title VII violations. *McCue v. State of Kan., Dep't of Hum. Res.*, 165 F.3d 784, 791 (10th Cir. 1999). The Tenth Circuit has found that back pay and reinstatement and front pay in lieu of reinstatement fall within that equitable relief for Title VII purposes. *Id.* at 792; *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005) ("Front pay is an equitable

remedy awarded by the court (not the jury)."); *Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1047 (10th Cir. 2021) ("Backpay is viewed as equitable relief in a Title VII case to be decided by the judge . . . unless the parties have consented otherwise.").

Further, it appears that the same is true for Title IX, though neither the Supreme Court nor the Tenth Circuit has ruled so explicitly and it does appear that monetary, legal remedies separate from equitable relief are also available under Title IX. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75–76 (1992) (while discussing the scope of remedies available to a plaintiff under Title IX, asserting that backpay and prospective relief are equitable in nature). The court also agrees that promissory estoppel is a claim that sounds in equity and is typically decided by the court. *See Shappley v. Amedica Corp.*, No. 2:11-CV-1198, 2012 WL 13018829, at *1 (D. Utah Mar. 1, 2012).

## II. Plaintiff's Damages

The above analysis, however, only provides a starting point. Just because the promissory estoppel claim and those forms of relief are equitable in nature does not mean that (1) the relief Plaintiff is actually seeking is equitable in nature or (2) the court should bifurcate those issues from trial.

Defendants primarily focus their arguments on these points. They respond that Plaintiff does not seek exclusively equitable relief. Specifically, they argue that Plaintiff's primary aim is the recovery of compensatory or consequential damages in the form of what she purports are her delayed and lost future earnings. "Thus, Plaintiff's is chiefly a claim for economic not equitable remedies that should first be decided by a jury." ECF No. 232 at 5.

Overall, Plaintiff claims damages arising from her having to leave the country to continue her training and from the derailment of her career path. ECF No. 235 at 4; *id.* at 9 ("Dr. Pingree

was not hired at any of the institutions she applied for in the United States after she left the University of Utah, causing her to have to leave the country and to suffer substantial economic damages both retrospectively and prospectively."). Defendants are correct that Plaintiff, in her complaint, seeks actual damages, compensatory damages, and consequential damages. ECF No. 24 at 31–32. But she also seeks equitable relief, back wages, and front wages. *Id*

Plaintiff's trial brief helps to further clarify the types of damages she is seeking from her five claims. First, she seeks punitive damages on the equal protection claim, which are for the jury to decide. Second, she seeks non-economic damages in the form of emotional distress damages from the equal protection and Title VII retaliation claims, which are also for the jury to decide. Finally, she is seeking economic damages on each of her claims. She argues that the entirety of economic damages from her Title VII retaliation claim, Title IX discrimination claim, and Title IX retaliation claim fall under the umbrella of equitable relief that the court should properly consider. Note that any damages from the promissory estoppel claim would also be decided by the court if the court were to determine liability for the claim given its equitable nature.

Plaintiff is thus arguing that, with respect to the Title VII and Title IX claims, the jury should make only a liability determination, with the court then deciding the resulting damages. Plaintiff specifically characterizes this relief as backpay and reinstatement or prospective equitable relief, including front pay in lieu of reinstatement. ECF No. 235 at 13.

But Defendants argue that the damages Plaintiff is seeking from those claims are more accurately characterized as legal in nature rather than equitable, even if Plaintiff is broadly construing them as backpay and front pay. As they state: "The vast majority of Plaintiff's claimed $6 million in purported damages consist of forward-looking, hypothetical earnings rather than concrete past wage loss from her employment with the University. That is, Plaintiff is seeking the

purported income she contends she would have earned as a cardiologist under her asserted 'but-for' timeline, which assumes . . . that Plaintiff would have become a cardiologist in the United States approximately three years earlier than her actual cardiology career trajectory has been in Switzerland." ECF No. 232 at 3.

Defendants are correct that any backpay associated with a reinstatement would be limited to what she would have earned as a resident in the University's Internal Medicine Program. And while those damages may be relatively small, they are nevertheless equitable.

The next question is whether the forward-looking damages she seeks are equitable in nature, especially because reinstatement is no longer an option. A major nuance here is whether those damages are properly characterized as front pay or as lost future earnings, which are treated as distinct forms of relief. *See Jensen v. W. Jordan City*, 968 F.3d 1187, 1199–1200 (10th Cir. 2020) (citing to *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998)).

"Properly understood, the two types of damages compensate for different injuries and require the court to make different kinds of calculations and factual findings." *Williams*, 137 F.3d at 954. The "essence of a lost future earnings award" is damages that account for a narrowing of a range of economic opportunities available to a plaintiff and a diminution in the ability to earn a living. *Jensen*, 137 F.3d at 1200. It compensates for "a lifetime of diminished earnings" including "the subsequent decrease in the employee's attractiveness to other employers into the future, leading to further loss in time or level of experience." *Williams*, 137 F.3d at 953.

In contrast, front pay is a substitute for reinstatement when reinstatement is not available. *Williams*, 137 F.3d at 951. It is "best understood as 'a monetary award equal to the gain [the plaintiff] would have obtained if reinstated.'" *Id.* at 952. It is often limited in duration, such as by the fact that a plaintiff would have lost or left that position inevitably. *See id.* at 953.

In this case, it is clear that the bulk of damages that Plaintiff seeks (as listed in her initial expert report) are lost future earnings, rather than front pay. *See* ECF No. 178-3. Any front pay here would properly be limited to lost wages from the Internal Medicine residency position. Because the residency program had a set end, front pay would be limited to that end point. In contrast, damages resulting from Plaintiff's inability to secure another residency and a delayed career start are lost future earnings.

Ultimately, Plaintiff is correct that her Title VII and Title IX claims may result in equitable relief—backpay and reinstatement or front pay in lieu of reinstatement—that is traditionally decided by the court. Further, she is correct that her promissory estoppel claim sounds in equity and should thus be decided by the court. But the majority of damages she seeks from her Title VII and Title IX clams—her lost future earnings—are not equitable in nature. Instead, they are legal in nature, for the jury to decide. Thus, Plaintiff's argument that the jury should only decide liability with respect to the Title VII and Title IX claims falls flat.

## III.   Bifurcating the Issues

The court next considers how best to bifurcate its determination of equitable remedies and the promissory estoppel claim.[1] The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. As the Supreme Court has stated, "[i]f a legal claim is joined

---

[1] Defendants argue that Plaintiff demanded a jury trial without limitation. The court, however, does not read Plaintiff's prior demands for a jury trial to have waived her ability to have equitable issues determined by the court. Federal Rule of Civil Procedure 39 states that "[w]hen a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless: (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or (2) *the court, on motion* or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a) (emphasis added). Here, Plaintiff has moved for the court to deem certain issues as properly determined by the court.

with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Tull v. United States*, 481 U.S. 412, 425, (1987).

Thus, as the Tenth Circuit has held, that right "must be preserved by trying [the legal] claims first (or at least simultaneously with the equitable claims), and the jury's findings on any common questions of fact must be applied when the court decides the equitable claims." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1222 (10th Cir. 2013) (quoting *Colo. Visionary Acad. v. Medtronic, Inc.*, 397 F.3d 867, 875 (10th Cir. 2005)).

The court accordingly finds that it may properly consider Plaintiff's promissory estoppel claim and claims for equitable relief after the jury has returned its verdict in a bifurcated proceeding. *See, e.g.*, *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1342 (D. Colo. 2020) (deciding the equitable issues will be determined by the court after the jury's resolution of the legal issues). The court adopts the formulation of the bifurcated process discussed at the final pre-trial conference.

Specifically, within the jury trial, all evidence relevant to Plaintiff's claims will be presented to the jury, including evidence relevant to her promissory estoppel claim. Thus, the right to a jury trial on all legal issues, including those that are common to both legal and equitable matters, will be preserved. As Defendants note, various factual issues permeate all of Plaintiff's claims. For example, whether Plaintiff "did well" in her preliminary year is central to both the promissory estoppel claim (as a condition precedent to the promise) and the claims of discrimination (as the provided non-discriminatory reason). With all evidence relevant to Plaintiff's claims being presented to the jury, "the essential factual issues which are central to both" the legal and equitable claims will "be first tried to the jury" in an unimpaired manner. *Ag Servs.*

*of America, Inc. v. Nielsen*, 231 F.3d 726, 730 (10th Cir. 2000).

The court will rule on the promissory estoppel claim and any equitable remedies after the jury reaches its verdict on the legal claims and remedies, based solely on the evidence presented in trial and any subsequent briefing the court may choose to request. In making those determinations, the court will be bound by the jury's verdict, including by findings implicit in the verdict and with respect to any common questions of fact. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 966 (10th Cir. 2002).

## CONCLUSION

For the reasons above, the court GRANTS IN PART and DENIES IN PART Plaintiff's motion. ECF No. 226. Within the jury trial, all evidence relevant to Plaintiff's claims will be presented to the jury, including evidence relevant to her promissory estoppel claim. The jury then will properly decide the legal claims and any legal remedies, including those available under Title VII and Title IX. The court will subsequently rule on the promissory estoppel claim and any equitable relief available under Title VII and Title IX in a bifurcated proceeding after the trial, in a manner consistent with the jury's verdict and based solely on the evidence presented in trial and any subsequent briefing the court may request.

Signed February 26, 2026.

BY THE COURT

_____
Jill N. Parrish
United States Chief District Judge